**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

---

**STEUBEN FOODS, INC.,**

                 *Plaintiff*,

    -*v*-

**GEA PROCESS ENGINEERING, INC.**
**d/b/a GEA PROCOMAC, and**
**GEA PROCOMAC S.p.A.**

             *Defendants*.

C. A. No.: 1:12-cv-00904-WMS-HKS

---

**PLAINTIFF'S MEMORANDUM IN RESPONSE TO DEFENDANTS'**
**MOTION [Dkt. #32] FOR PROTECTIVE ORDER**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................. iii

INTRODUCTION ..................................................................................1

BACKGROUND ....................................................................................2

DISCUSSION ........................................................................................5

I.     GEA's Proposed Restrictions On Access To Highly Confidential
Information Are Overly Onerous In Light Of The Circumstances
Of This Case And Steuben's Compromise Proposals. ...........................5

     A.     Denying Access To Steuben's Consulting Engineer, Mr. Taggart,
Is Unnecessary And Prejudicial Where There Is Little Risk
Of Inadvertent Disclosure Or Competitive Use. ........................5

     B.     Denying Limited Access By A Single Business Person Is
Unnecessary And Prejudicial Where There Is Little Risk Of
Inadvertent Disclosure Or Competitive Use. ..............................8

II.     GEA's Proposed Prosecution Bar Is Overbroad And Inappropriately
Applies To Reexaminations. ...............................................................9

     A.     GEA's Prosecution Bar Is Ambiguous, Overbroad And Unduly
Burdensome. ..........................................................................10

          1.     The Relevant Legal Standard Limits An Appropriate
Prosecution Bar To Counsel Engaged In Competitive
Decision Making In The Drafting Of Patent Claims. ...................10

          2.     The Subject Matter Of A Prosecution Bar Should Reflect
The Risk Being Addressed; GEA's Prosecution Bar
Covering The Patents' "Fields Of Invention" Is
Ambiguous And Overbroad. .......................................................13

     B.     Any Prosecution Bar Here Should Not Extend To Reexaminations. .......15

          1.     Reexamination Of The Patents-In-Suit Does Not Pose
The Relevant Risk Of Competitive Misuse. ................................15

          2.     GEA's Application Of A Prosecution Bar To
Reexamination Is Overbroad And Unduly Burdensome. .............19

    C.     Steuben Has Proposed An Adequate And Properly Tailored
Prosecution Bar. .......................................................................................21

III.    The Burden Should Be On The Producing Party To Seek And
Demonstrate The Need For A Confidentiality Designation. ................................21

CONCLUSION ...........................................................................................................22

# TABLE OF AUTHORITIES

## Cases

*Ameranth Inc. v. Pizza Hut, Inc.,*
    No. 3:11-cv-01810-JLS-NLS, 2012 WL 528248 (S.D. Cal. Feb. 17, 2012) ....................18

*Crystal Image Tech. v. Mitsubishi Electr. Corp.,*
    No. 08-307, 2009 WL 1035017 (W.D. Pa. Apr. 17, 2009)...............................................18

*Deutsche Bank Trust Co. Americas,*
    605 F.3d 1373 (Fed. Cir. 2010)................................................................................ *passim*

*Dove v. Atlantic Capital Corp.,*
    *Corp.*, 963 F.2d 15, 20 (2d Cir. 1992) .............................................................................5

*Document Generation Corp. v. Allscripts, LLC,*
    No. 6:08-cv-479, 2009 WL 1766096 (E.D. Tex. Jun. 23, 2009) ......................................18

*Edwards Lifesciences AG v. Corevalve, Inc.,*
    699 F.3d 1305 (Fed.Cir. 2012)........................................................................................19

*Hochstein v. Microsoft Corp.,*
    No. 04-73071, 2008 WL 43875942008 (E.D. Mich. Sept. 24, 2008).........................16, 18

*Kenexa Brassring, Inc. v. Taleo Corp.,*
    No. 07-521-SLR, 2009 WL 393782 (D. Del Feb. 18, 2009) ......................................16, 18

*NeXedge, LLC v. Freescale Semiconductor, Inc.,*
    820 F. Supp. 2d 1040 (D. Ariz. 2011) .................................................................16, 18, 20

*Pall Corp. v. Entergris, Inc.,*
    655 F. Supp.2d 169 (E.D.N.Y. 2008) ............................................................................. 18

*Predicate Logic, Inc. v. Distributive Software, Inc.,*
    544 F.3d 1298 (Fed. Cir. 2008)........................................................................................17

*Reiffin Family Trust,*
    340 Fed. Appx. 651 (Fed. Cir. 2009)...............................................................................15

*Sanders v. The Mosaic Co.,*
    No. 09-00016, 2012 WL 640159 (W.D. Mo. Feb. 27, 2012) ...........................................18

*Tailored Lighting, Inc. v. Osram Sylvania Products, Inc.,*
    236 F.R.D. 146 (W.D.N.Y. 2006)......................................................................................7

*U.S. Steel Corp. v. United States,*
    730 F.2d 1465 (Fed. Cir. 1984)........................................................................4, 10, 15, 16

*Vasudevan Software, Inc. v. Int'l Business Machines Corp.*,
No. C09-05897 RS (HRL), 2010 WL 3629830 (N.D. Cal. Sept. 14, 2010)......................18

*Xerox Corp. v. Google, Inc.*,
270 F.R.D. 182 (D. Del. 2010) ............................................................................ 15-18, 20

## **Statutes and Rules**

United States Code, Title 35, Section 112.................................................................................17

United States Code, Title 35, Section 305.............................................................................15, 16

United States Code, Title 35, Section 314.................................................................................16


Federal Rules of Civil Procedure, Rule 26(c) ....................................................................5, 9, 22

## INTRODUCTION

The plaintiff, Steuben Foods, Inc. ("Steuben"), submits this Memorandum, together with Steuben's [Proposed] Protective Order (Exhibit 1 attached hereto) and the supporting Declarations of W. Cook Alciati and Frank V. Balon (Exhibits 2 and 3, respectively, attached hereto), in response to the Motion for protective order submitted by the defendants GEA Process Engineering, Inc. d/b/a GEA Procomac ("GPNA") and GEA Procomac S.p.A. ("Procomac") (collectively "GEA"). The parties largely agreed upon a form of protective order, and believe they have since the filing of the Motion also resolved one sub-issue originally in dispute – which in-house counsel could have access to Highly Confidential information. However, three issues remain in dispute: (i) GEA takes the position that no employees (other than certain in-house counsel) should have access to information it designates as Highly Confidential, (ii) GEA seeks an expansively worded prosecution bar that Steuben believes is overly broad and unduly burdensome, and GEA seeks as well to apply a bar to reexamination proceedings despite the great weight of the case law refusing to so apply a prosecution bar given the nature of reexamination proceedings; and (iii) GEA would place the burden of moving in the event of a dispute as to the confidentiality of a designated document on the receiving party, rather than on the producing party asserting the document's confidentiality.

In response, Steuben proposes a protective order that is reasonable, sufficient, and already a compromise as it (a) limits the number of individuals who might access GEA's Highly Confidential information to a very few – those the parties already agree upon, plus one engineering consultant and one business person, to have access solely for purposes of this action and assisting counsel in evaluating the case; and (b) agrees to accept a less ambiguous and more tailored "prosecution bar" (just not GEA's ambiguous and overbroad version, or its effort to apply the same to reexamination), and (c) places the burden in case of a dispute properly upon

the party asserting the confidentiality of its document and seeking protection for it.  For the reasons set forth herein, Steuben respectfully requests that the Court deny GEA's motion for entry of GEA's proposed protective order, and respectfully requests that the Court enter instead the [Proposed] Protective Order attached hereto as Exhibit 1.

## BACKGROUND

Steuben is a small, closely-held business that specializes in the manufacture of low-acid aseptic products.  While it employs several hundred line workers at its plant in Elma, New York, Steuben's management team consists of a small number of professionals responsible for running all aspects of its business, including a few person in-house legal department.  See Balon Decl. ¶¶2-3.  For this reason, the two main issues in dispute in the parties' competing protective order proposals impact Steuben's choice and use of counsel and have a particularly significant impact on Steuben's ability to litigate and manage this case.

As a small company in an emerging market, Steuben has developed innovations in the aseptic field in order to provide its customers with the highest quality and safest manufacturing services possible.  Steuben seeks to safeguard its expertise with intellectual property protection, including the five patents-in-suit.  Those patents cover certain methods and apparatus for aseptically sterilizing and filling bottles or jars in compliance with regulatory standards for aseptic food and beverage distribution, at commercially viable high output speeds, despite the narrow openings of such containers which makes such a sterile process at such a speed and volume problematic. See Complaint, ¶¶11-26 and Exhibits A-E (the patents-in-suit).

Notwithstanding Steuben's presumptively valid patents, of which there are six total with five asserted in this case, a few aseptic packaging equipment manufacturers, including the GEA defendants here as alleged in the Complaint, have manufactured and sold machinery covered by

2

the patents to food packaging companies and brand owners in the United States without a license from Steuben, choosing a course of infringement instead. Steuben's litigation seeks to enforce and protect its intellectual property rights against such infringement. The Complaint alleges that Procomac, the Italian parent company, installed six such machines at one customer's plant in the United States. Id. at ¶¶30-31. Upon information and belief, that occurred between 2008 and 2009. Now, acting through its domestic affiliate, defendant GPNA, GEA is, upon information and belief, currently in the process of selling and manufacturing at least one further machine to another customer and direct competitor of Steuben. See id. at ¶32. GEA is apparently proceeding in that regard notwithstanding this litigation. Neither the GEA defendants nor their customers obtained a license of Steuben's patents.

The parties' three points of disagreement are summarized as follows. The first involves who may have access to Highly Confidential information produced by an opposite party. Both sides agree to restrict use of designated material to use for purposes of this litigation, and to further limit disclosure of both Confidential and Highly Confidential information to an extent. In that regard, the parties agreed to allow, among others, up to three in-house attorneys (Par. 10(c)), up to three management employees (Par. 10(d)), and one pre-designated engineer (Par. 10(e)) to view "Confidential" information. The disagreement is over access to "Highly Confidential" information under Paragraph 11, where GEA proposes that no engineer or employee (other than certain in-house counsel) have access; while Steuben seeks access for one pre-designated engineer (for technical documents) who is not a competitive decision maker for the company, as well as one management employee (for marketing and financial information), both for the purpose of working with counsel to efficiently prosecute the litigation and to evaluate the strengths and weaknesses of the parties' claims and defenses so as to advise Steuben decision

makers accordingly (without disclosing any Highly Confidential information). Each individual would first review the protective order and sign an undertaking expressly agreeing to be bound by its provisions. See Exhibit 1, attached, ¶11(b)-(c), and Undertaking A thereto.[1]

Given GEA's resistance with respect to allowing an engineer access to Highly Confidential information, Steuben disclosed and has pre-designated Thomas Taggart for that role, and specifically names him in its proposal (Exhibit 1, ¶11(c)). Mr. Taggart was the inventor of the patents-in-suit and Steuben's principal engineer for over two decades, but is now retired and has no competitive decision-making role in Steuben's business. Balon Decl. ¶5. However, he is consulting with Steuben for the purpose of the litigation (id.), and his assistance in reviewing technical documents and GEA's machines is invaluable to Steuben's counsel given his knowledge and understanding of the technology.

---

[1]    When filing its motion papers, GEA notified Steuben that it was adding a preclusion of in-house attorneys who have a "non-legal" role from accessing Highly Confidential information, and explained the modification as a concern with Steuben's General Counsel, Mr. Balon, who now has a dual title as Chairman of Business Development. See GEA Memo. at p.5 n.2. In response, Steuben pointed out that under the law the proper question in determining whether to preclude in-house counsel is not whether they have some "non-legal" role, however immaterial or ministerial, but rather whether they have a competitive decision-making role, such as would raise the risk of competitive harm. *U.S. Steel Corp. v. United States*, 730 F.2d 1465, 1467 (Fed.Cir.1984) (holding that it is error to deny access to in-house counsel generally and that "[w]hether an unacceptable opportunity for inadvertent disclosure exists ... must be determined ... by the facts on a counsel-by-counsel basis...."). Steuben also disclosed its designated in-house counsel for Confidential information under ¶10: Frank Balon, W. Cook Alciati, and Brian Manka. Acknowledging that Mr. Balon now has a competitive decision-making role, while Mr. Alciati and Mr. Manka do not, Steuben agreed to preclude Mr. Balon from accessing Highly Confidential information. GEA agreed to allow Mr. Alciati and Mr. Manka access to Highly Confidential information, and in turn, is in the process of designating up to three in-house counsel for Confidential information, and up to three for Highly Confidential information. Steuben's proposal, Exhibit 1, attached, at ¶11, has been amended to reflect this. (The parties alternatively discussed including the names of the designees in the Protective Order upon agreement to a designee, though at this time GEA is in the process of identifying its designees, and the more prudent course may be to incorporate the standard, and exchange designations between counsel, as Steuben has done.) Should it turn out that the parties still have a dispute in this regard for any reason, Steuben would endeavor to supplement its briefing to address such a dispute if necessary.

The second area of dispute is the scope and application of a "prosecution bar". GEA has proposed a prosecution bar for any person who has seen Highly Confidential information that (a) disregards the legal standard to be applied, as discussed below, (b) employs ambiguous and overbroad language potentially implicating conduct other than the use of the disclosed information in drafting of patent claims, and then (c) adds a bar to any "participation" "in any way" in reexamination proceedings, despite the nearly unanimous case law that explains that application of a prosecution bar to reexamination is unnecessary and inappropriate. Steuben would agree to and proposes a narrowly tailored prosecution bar (Exhibit 1, ¶13), without additional application of a bar to reexaminations.

The third point of dispute is more simple. GEA seeks to place the burden of challenging a Confidential or Highly Confidential designation on the receiving party, rather than the producing party seeking to apply the protective order to a given document. Steuben believes GEA's position is not supported by the law, as the burden of seeking a protective order is on the party seeking to protect its information. Steuben's proposal reflects this. Exhibit 1 ¶20.

## DISCUSSION

On motions for a protective order under Fed.R.Civ.P. 26(c), "the burden is upon the party seeking non-disclosure or a protective order to show good cause." *Dove v. Atlantic Capital Corp.*, 963 F.2d 15, 20 (2d Cir. 1992).

I.  **GEA's Proposed Restrictions On Access To Highly Confidential Information Are Overly Onerous In Light Of The Circumstances Of This Case And Steuben's Compromise Proposals.**

   A.  **Denying Access To Steuben's Consulting Engineer, Mr. Taggart, Is Unnecessary And Prejudicial Where There Is Little Risk Of Inadvertent Disclosure Or Competitive Use.**

Steuben has agreed with GEA to limit access of material designated as Confidential or Highly Confidential to a small and defined set of individuals. Among others, the parties agreed

to allow each side to designate an engineer who may see Confidential information under Paragraph 10(e) of the proposed orders. For information designated as Highly Confidential, Steuben similarly seeks access for a single engineer, with the added condition that they sign an Undertaking expressly acknowledging the protective order's provisions, *and* Steuben has gone so far as to identify Steuben's designated engineer as Mr. Taggart, explaining that he is now retired and only consulting with Steuben for purposes of the litigation, including Steuben's other litigation concerning the same patents and reexamination proceedings.[2] See Exhibit 1, attached, at ¶11(c). Nevertheless, GEA refuses to allow Mr. Taggart (or any Steuben engineer) such access. As the party seeking to restrict disclosure, it has not and cannot carry its burden of showing good cause for such a restriction.

Contrary to the bare inferences and assumptions supporting GEA's argument seeking to prohibit access to Highly Confidential material, Mr. Taggart, retired and serving as a consultant for Steuben for purposes of the patent litigation, carries no real competitive risk to GEA from inadvertent disclosure or otherwise. Going forward, he will not be involved in competitive decision making at Steuben (see Balon Decl. ¶5), and will not be designing any new filling system for Steuben as GEA's memorandum suggests without foundation. To be clear, Steuben does not manufacture aseptic filling equipment and has no plans to enter into that business. Consequently, GEA's technical documents would not provide Mr. Taggart with any engineering

---

[2]    The parties have agreed to allow access to Confidential and Highly Confidential information to independent experts or consultants retained to assist in the preparation of the litigation under paragraphs 10(h) and 11. Retired and in a consulting role, Mr. Taggart could fit into that category of individual allowed access to Highly Confidential material. GEA could try to object under the agreed procedure of Paragraph 12, but such objection would not be well grounded, and the parties would be before the Court in that context. In any case, given his recent retirement and his prior role at Steuben as principal engineer and inventor of the patents, Steuben chose to designate him at the outset and explain its intentions and his role, and allow GEA one employee engineer in return to the extent he or she is not a competitive decision maker and signs the Undertaking.

advantage even if Mr. Taggart was still actively involved in engineering for Steuben.  GEA's argument is based on inaccurate assumptions about some hypothetical risk of competitive misuse, untethered to the actual circumstances of this case.

Cognizant of this key fact that the parties here are not direct competitors, GEA argues that Steuben's license of its technology to Stork Food & Dairy Systems B.V. ("Stork") somehow raises a risk of competitive harm through disclosure to Stork by Mr. Taggart.  Such a risk was found in the case it relies heavily upon, *Tailored Lighting, Inc. v. Osram Sylvania Products, Inc.*, 236 F.R.D. 146 (W.D.N.Y. 2006).  However, GEA fails to note the distinguishing factors – in *Tailored Lighting* the inventor/licensor was, according to its own discovery admissions, not only still active, but "working with [its] licensee to develop lighting products based on the patent-in-suit." *Id.* at 149.  It was in that context the court there saw the competitive risk because even assuming the integrity of the plaintiff, the court reasoned that the patent owner working with its exclusive licensee to further his own scientific and technological interests would not be able to avoid the subconscious use of the confidential information in question.  *Id.*  That situation does not exist here.  GEA fails to mention that Stork is a non-exclusive licensee, a very different relationship.  To be clear, Mr. Taggart is not working with Stork to develop new aseptic filling machines.  Thus, unlike in *Tailored Lighting,* GEA is in fact relying on an assumption that Mr. Taggart would willfully violate the terms of the protective order and undertaking he would be required to sign before viewing GEA's Highly Confidential information.  That assumption is completely without foundation.

Thus, in weighing the equities, GEA's proposal would unnecessarily prevent Steuben, a company with limited resources, from relying on Mr. Taggart if necessary to review and assess GEA's machines and related technical documents.  Steuben and its counsel have relied upon Mr.

Taggart for understanding of technical matters for purposes of the litigation. As there is no competitive risk, GEA's refusal to allow Mr. Taggart access appears to be merely a strategic attempt to hamper Steuben's ability to prosecute this case in the most cost efficient and effective way. Regardless of intent, that is the affect of GEA's proposed order. On the other hand, Steuben's proposed order (Exhibit 1, attached, at ¶11(c)), allowing each side to designate one engineer (Mr. Taggart in Steuben's case) to have access as needed to assist counsel in understanding the technical aspects of this action, protects both sides proprietary interests, and allows for the effective and efficient litigation of this matter.

### B. Denying Limited Access By A Single Business Person Is Unnecessary And Prejudicial Where There Is Little Risk Of Inadvertent Disclosure Or Competitive Use.

GEA also seeks to prevent disclosure of all *Highly Confidential* materials to even one designated management employee, as Steuben's proposal would allow. Steuben Exhibit 1 at ¶11(b). Steuben's proposal is designed to permit counsel to share information with a pre-designated business person as necessary to prosecute the case and to allow the parties to understand the value of the case and possible avenues to settlement. Steuben's proposal would require the business person to sign an undertaking that affirms that he or she has read the Protective Order and will not use *Highly Confidential* information for any purpose outside of this litigation. Arguing to preclude this limited access of a business executive, as above, GEA suggests such disclosure would risk competitive harm, even though Steuben is not a competitor in the business of manufacturing and selling filling equipment. See Balon Decl. ¶2. Here, GEA bases its argument on the hypothetical possibility that GEA and Steuben would enter a customer-vendor relationship, based merely on a request for proposal several years ago, and notwithstanding the pendency of this litigation over Steuben's patent rights. At the least, that possibility is so remote now it must fail to carry GEA's burden of showing good cause for the

relief GEA seeks.  Steuben's proposal of limited disclosure subject to the restrictions of the Protective Order and its Undertaking will adequately protect the parties' confidentiality interests, and ultimately serve the parties' interests in the efficient and expedient resolution of this matter.

## II.    GEA's Proposed Prosecution Bar Is Overbroad And Inappropriately Applies To Reexaminations.

A patent "prosecution bar" refers to a protective order provision barring counsel who gain access to confidential technical information from thereafter drafting patent claims concerning the same subject matter, wherein one could try to draft claims based on the disclosed information to trigger infringement.  The leading Federal Circuit opinion on the subject of prosecution bars is *In re Deutsche Bank Trust Co.*, 605 F.3d 1373 (Fed. Cir. 2010).  As with other motions for a protective order under Fed.R.Civ.P. 26(c), the burden of showing good cause is carried by "a party seeking to include in a protective order a provision effecting a patent prosecution bar."  *In re Deutsche Bank,* 605 F.3d at 1378.  As to that burden, the Federal Circuit in *Deutsche Bank* held that "a party seeking imposition of a patent prosecution bar must show that the information designated to trigger the bar, the scope of activities prohibited by the bar, the duration of the bar, and the subject matter covered by the bar reasonably reflect the risk presented by the disclosure of proprietary competitive information." *Id.* at 1381.  GEA has not and cannot carry that burden with the overly broad prosecution bar it seeks, and certainly not with its attempt to impose a reexamination bar as well

Here again Steuben proposed a compromise provision aimed at alleviating any legitimate concern GEA could have.  Steuben's proposal (Exhibit 1, attached hereto, ¶13), accepts a narrowly tailored prosecution bar, tied to prosecution of patent claims concerning the relevant type of filling machine and process, and without application to reexamination where any

amended or new claims under the existing patents-in-suit can only narrow the coverage, not expand it to include GEA's processes or apparatus not already covered by the original claims.

     **A.**     **GEA's Prosecution Bar Is Ambiguous, Overbroad And Unduly Burdensome.**

     Before reaching the reexamination issue where GEA overreaches most seriously, it must be understood that other provisions of GEA's proposed prosecution bar are overly broad in their own right. GEA's bar fails to take into account the fact specific analysis with respect to the proper application of a prosecution bar set forth by the Federal Circuit in the *Deutsche Bank* case such that what GEA somehow calls a "limited" bar would apply broadly to participation in all prosecution related activity and to the entire field of the patented technology beyond the subject matter of the disclosed information.

     **1.**     **The Relevant Legal Standard Limits An Appropriate Prosecution Bar To Counsel Engaged In Competitive Decision Making In The Drafting Of Patent Claims.**

     The court *In re Deutsche Bank* explained that a bar must be narrowly designed and applied such that, among the other requirements, "the scope of activities prohibited by the bar … reasonably reflect[s] the risk presented by the disclosure of proprietary competitive information", rather than a broad and general prohibition against any participation in any prosecution activity generally. *In re Deutsche Bank,* 605 F.3d at1378. The Federal Circuit there followed and explained its earlier decision in *U.S. Steel Corp. v. United States*, 730 F.2d 1465, 1468 (Fed.Cir.1984), wherein the court found error in denying access to confidential information "solely because of in-house counsel's 'general position'", and that the counsel-by-counsel determination should turn on the extent to which counsel is involved in "competitive decision making" with its client. In *Deutsche Bank* Federal Circuit reaffirmed that the appropriate analysis is whether the bar is tailored to apply to counsel engaged in competitive decision making activity in the claim drafting process. *Id.*

10

GEA's proposal (¶13(b)) runs afoul of the legal standards set by the Federal Circuit in this regard, including by implicating all "persons" who gain access to Highly Confidential information" and "participate or aid in any way in the drafting or amendment of any patent claims, including in preparing or prosecuting patent applications, reissues, reexaminations, reviews, or other patent office proceedings". As stated above, under *Deutsche Bank,* it is not the case that all involvement in any patent prosecution work or patent office proceedings of any kind can be barred, as many activities do not involve the level of competitive decision making and risk of disclosure or misuse, as even patent prosecution "is not a one-dimensional endeavor and can encompass a range of activities." *In re Deutsche Bank*, 605 F.3d at 1379 (criticizing as "short-sighted" decisions incorrectly applying an overbroad bar to counsel generally). Moreover, Steuben would agree (and has in its attached proposal) that, in accordance with *Deutsche Bank*, in-house counsel that will have access to GEA's Highly Confidential materials under ¶11 will not be competitive decision makers, which makes GEA's expansive prosecution bar language in its ¶13 especially overbroad, unnecessary, and potentially cause for confusion.

It is helpful in determining the proper structure and scope of a prosecution bar, to understand what the Federal Circuit has said would be the standard once any bar is already in place in order to exempt counsel or certain activity from the bars application. As with the appropriate narrow tailoring of a prosecution bar as described above, the Federal Circuit in *In re Deutsche Bank* also held that when a prosecution bar is in place, a party may be exempted from it by showing on a counsel-by-counsel basis: "(1) that counsel's representation of the client in matters before the PTO does not and is not likely to implicate competitive decisionmaking related to the subject matter of the litigation so as to give rise to a risk of inadvertent use of confidential information learned in litigation, and (2) that the potential injury to the moving party

from restrictions imposed on its choice of litigation and prosecution counsel outweighs the potential injury to the opposing party caused by such inadvertent use." 605 F.3d at 1381. Even though no prosecution bar is yet in place and no confidential information is disclosed, it is instructive to discuss the actual individuals most likely subject to this analysis to see how GEA's proposed prosecution bar is overbroad.

Specifically, this relates to Mr. Alciati, one of Steuben's in-house counsel. See generally, Alciati Declaration (Exhibit 2, attached). The *In re Deutsche Bank* case squarely and thoroughly addresses the question of in-house counsel activity in patent prosecution and rejected the proposition that all such activity is properly subject to a prosecution bar. *Id.* at 1378-81. To be clear, while Mr. Alciati is not a patent attorney, he has since joining Steuben in October 2012 acted as a point of contact between Steuben and its outside patent prosecution counsel, Arlen Olsen of Schmeiser, Olsen & Watts LLP, overseeing the engagement under which Mr. Olsen is handling the reexamination proceedings. Any prosecution bar should not apply to Mr. Alciati continuing that role after he has reviewed GEA's Highly Confidential material (which GEA has agreed to allow) both because he is not a competitive decision maker and because the bar should not apply to reexamination activity at all, as discussed below. Under the relevant legal standards, to the extent any prosecution bar would sweep in and bar Mr. Alciati's continued activity in that regard, it is overbroad and unduly prejudicial.

As to outside counsel, similarly, it is the drafting and prosecution of new patent claims that may be properly subject to such a bar, not all activity. To be clear, under Steuben's own proposal, outside counsel who review GEA's Highly Confidential design documents will agree not to engage in drafting claims for new patent applications on the subject matter of those documents for the specified period. Specifically, this relates to Christopher Blank of Hiscock &

Barclay, LLP.  While Mr. Blank is a patent attorney and does engage in patent prosecution in his practice generally, he has not been and will not be engaged in patent prosecution work for Steuben that could properly be subject to a bar.  Mr. Blank has not prosecuted any patents or drafted any patent claims for Steuben.  For the reexamination proceedings, Mr. Blank has reviewed requests for reexamination and other papers filed by requestors and offered general advice and broad suggestions about those requests and papers.  As co-lead counsel for Steuben in this litigation, Mr. Blank must have access to GEA's Highly Confidential information, which both sides' proposals (under paragraph 11) would allow.  Any prosecution bar should not apply to Mr. Blank continuing that role after he has reviewed GEA's Highly Confidential material both because he does not engage in the level of activity that could be considered competitive decision making and because the bar should not apply to reexamination activity at all, as discussed below.  Under the relevant legal standards, to the extent any prosecution bar would sweep in and prohibit Mr. Blank's limited activity in this regard, it is overbroad and unduly prejudicial.

> **2.      The Subject Matter Of A Prosecution Bar Should Reflect The Risk Being Addressed; GEA's Prosecution Bar Covering The Patents' "Fields Of Invention" Is Ambiguous And Overbroad.**

Under the Federal Circuit's holding in *In re Deutsche Bank*, "a party seeking imposition of a patent prosecution bar" must also show that the "subject matter covered by the bar reasonably reflect[s] the risk presented by the disclosure of proprietary competitive information." *In re Deutsche Bank,* 605 F.3d at 1381.  GEA has not carried this burden, and cannot carry this burden with the proposal it presents.

GEA's prosecution bar (¶13(b) in its proposal) would apply to any new patents and activities (as discussed above) that pertain broadly to the "field(s) of inventions of the patents-in-suit".  Presumably, GEA refers to the "Field of Invention" paragraph in the specification of each

13

of the five patents-in-suit, which include three different descriptions among them. The Field of Invention in a specification is generally describing the technology class within which the patented invention falls. Thus, the "field" is in general much broader potentially than the patented technology. Assuming this is the aim of GEA's language, the "Fields" described in the patents-in-suit each include two sentences, one a very general statement in each that the inventions relate generally to systems for the aseptic packaging of food products, and a second sentence only slightly less general in four of the five patents.[3]

Those "fields" are not only broader than the patents themselves, more importantly they are potentially far more general, in at least four of five cases, than the subject matter of the Highly Confidential information, which is to be documentation disclosing the design and operation of GEA's accused machines for the aseptic sterilization and filling of bottles at high output speeds (i.e. greater than 100 bottles per minute). A prosecution bar is intended to prevent use of the disclosed information in the drafting of new patent claims: narrowly drawn such that "subject matter covered by the bar reasonably reflect[s] the risk presented by the disclosure of proprietary competitive information." *In re Deutsche Bank,* 605 F.3d at 1381. Any bar here should be narrowly drawn in reference to the subject matter of that documentation disclosed, and not be a bar to any patent application work relating to aseptic packaging systems generally.

To that end, Steuben's proposed prosecution bar would pertain to a new patent application concerning the "aseptic sterilization and filling of bottles at rates greater than 100 bottles per minute as described in the disclosed and accessed HIGHLY CONFIDENTIAL Information" which ties the field of invention to how GEA's accused machines are designed to

---

[3]     In the fifth, the second sentence is somewhat more specific to the nature of the patented invention (that of U.S. Patent No. 6,475,435, explaining that invention as relating to an apparatus and methods for providing sterilization zones in an aseptic packaging sterilization tunnel).

operate and the disclosed information. See Exhibit 1, attached, ¶13.   Steuben's proposed language adequately protects against GEA's feared risk of inadvertent disclosure by ensuring that claims for new patent applications on the same subject matter cannot be drafted by counsel with access to specifications of GEA machines as a result of the litigation.

**B.        Any Prosecution Bar Here Should Not Extend To Reexaminations.**

Moreover, under its ¶13(a), GEA' prosecution bar would seek to prevent any individual that has viewed Highly Confidential information from participating in any way in the reexamination of the patents-in-suit.   GEA's proposal is inappropriate as it ignores the fundamental difference between reexamination proceedings and patent prosecution generally, and, for reasons overlapping with those discussed above, GEA's reexamination bar language is overbroad and unduly burdensome under the *Deutsche Bank* standard that even a prosecution bar must be narrowly tailored to bar only those activities that could give rise to an "unacceptable risk" of competitive misuse in order to deprive the patentee of its right to choose its own counsel in front of this Court and the Patent Office and to manage its affairs.

**1.        Reexamination Of The Patents-In-Suit Does Not Pose The Relevant Risk Of Competitive Misuse.**

Most fundamentally, "[u]nlike patent prosecution, reexamination is a limited proceeding assessing only the patentability of existing claims against specific prior art references." *Xerox Corp. v. Google, Inc.et al*, 270 F.R.D. 182, 184 (D.Del. 2010) (*following U.S. Steel and In Re Deutsche Bank, supra)* (rejecting defendant's proposed order including a reexamination bar and adopting plaintiff's proposed protective order).   A patentee is not permitted on reexamination to amend "in a manner that has the effect of enlarging the scope of the patent's claims." *In re Reiffin Family Trust,* 340 Fed. Appx. 651, 659 (Fed. Cir. 2009) (citing 35 U.S.C. §305). Therefore, since reexamination involves just the patent and the prior art, most courts see that a

defendant's "Highly Confidential Information [as] basically irrelevant to the reexamination." *See Kenexa Brassring, Inc. v. Taleo Corp.*, 07-cv-521, 2009 WL 393782 (D.Del. Feb. 18, 2009) (declining to extend prosecution bar to reexamination); *see also, e.g., Hochstein v. Microsoft Corp.*, 04-cv-73071, 2008 WL 4387594, * 3 (E.D.Mich. Sep. 24, 2008) (granting motion for leave to permit litigation counsel to participate in reexamination, finding prosecution bar covering reexamination overbroad and modifying protective order).

Courts that have been presented with GEA's argument that confidential information could be used to strategically draft claims during reexamination, nonetheless hold that given the nature of reexamination such a "risk" fails to rise to the level of unacceptable risk discussed in *U.S. Steel* and *In re Deutsche Bank*: "[W]hile claims may be broadened during prosecution to support new, tailor-made infringement allegations, amendments made during reexamination can only serve to *narrow* the original claims." *Xerox*, 270 F.R.D. at 184-85 (emphasis in original); *see also NeXedge, LLC, v. Freescale Semiconductor, Inc., et al.*, 820 F.Spp.2d 1040, 1043 (D.Az. 2011) (*following In re Deutsche Bank and U.S. Steel, supra*) (refusing to adopt reexamination bar).[4] Specifically, under either *inter partes* reexamination under 35 U.S.C. §314(a), or *ex parte* reexamination under 35 U.S.C. §305, claims that broaden or enlarge the scope of a claim of a patent undergoing reexamination are to be rejected: "No proposed amended or new claim enlarging the scope of a claim of the patent will be permitted in a reexamination proceeding under this chapter." 35 U.S.C. §305.

---

[4]    The protective order will bar use of designated material for purposes other than the litigation. Steuben is also willing to stipulate expressly that it will not rely on GEA's Highly Confidential information in the reexamination proceedings if that is helpful in understanding that any "risk" here is outweighed by the equities of allowing Steuben its choice of counsel and efficient allocation of resources. *See NeXedge, LLC*, 820 F.Supp.2d 1040, 1044 (finding plaintiff's stipulation in protective order that it would not rely on defendant's highly confidential information in reexamination proceedings an additional reason for finding application of prosecution bar to reexamination proceedings unnecessary and inappropriate).

Another reason new claims or amendments in reexamination can only narrow claims and not broaden a patent to cover that which was not originally covered is the fact that any proposed amendments will require support from the patent's specification under 35 U.S.C. §112, which requires that any claim of a U.S. Patent is supported by a sufficient corresponding disclosure in the specification of the patent. *See Xerox*, 270 F.R.D. at 185 ("Furthermore, to the extent additional details are added to a claim in reexamination [...] those details must already exist in the original patent's specification").  Indeed, Steuben must specifically identify to the PTO the basis for its amendments or new claims and has complied with that requirement each time it has amended or added new claims during the reexamination process.  (See, e.g., Kiersz Decl., Ex. 11, p. ix-x) (demonstrating Steuben's obligation to provide Section 112 support for new or amended claims).  As such, any amendments made to maintain valid claims must be supported by information *already* contained in the patent, and even counsel who has reviewed information GEA produces in this case cannot make that which did not infringe the original claim, infringing under an amended claim.[5]

These aspects of the process and the fundamental nature of reexamination, including the limited potential scope of any resulting claims, undercuts the risk that GEA touts:  "Hence, no product that did not infringe a patent before reexamination could ever infringe that patent following reexamination." *Xerox*, 270 F.R.D. at 184-5 (*citing Predicate Logic, Inc. v.*

---

[5]      Another reason any "risk" is not real or at least does not rise to the level required, and reexamination bars are not seen as necessary, is that the patentee will seek to keep its claims as broad as possible in the reexaminations without regard to any specific infringing device (i.e. regardless of all information it has about specific infringing machines). *See, e.g., Xerox*, 270 F.R.D. at 185 ("In any event, plaintiff will certainly seek to preserve the broadest possible reading of its claims on reexamination regardless of any insight gleaned from defendants' confidential information").  Indeed, making decisions based on a particular accused device would be short-sighted and risk losing infringement arguments against all other infringing machines that are not identical to the GEA machines.

*Distributive Software, Inc*., 544 F.3d 1298, 1302-03 (Fed.Cir. 2008)).  Steuben cannot simply broaden or add any claims it desires in an effort to cover GEA's filling lines.

For these reasons, while a few district court decisions have allowed reexamination bars under the unique circumstances of their cases, the vast majority of courts that have addressed this issue have declined to extend the prosecution bar concept to reexamination. *See cases discussed supra: Xerox, Kenexa Brassring, Hochstein, NeXedge; see also Ameranth, Inc. v. Pizza Hut, Inc.*, 3:11-cv-01810, 2012 WL 528248, *6 (S.D. Cal. Feb. 17, 2012) (a review of cases shows "near unanimous support *against* extending the bar to cover reexamination") (emphasis in original); *Pall Corporation v. Entergris, Inc.* 655 F. Supp.2d 169, 173 (E.D.N.Y. 2008) (distinguishing the few cases that applied a reexamination bar as unique procedural posture and history; finding restricted nature of reexamination "both underscores the distinction between initial patent prosecution and reexamination, and effectively mitigates the potential to misuse [Patent Office] procedures to gain a collateral business or litigation advantage, thereby rendering a prosecution bar in the reexamination context largely unnecessary"); *Vasudevan Software, Inc. v. International Business Machines Corporation*, et al., No. C09-05897 RS, 2010 WL 3629830 (N.D.Cal. Sept. 14, 2010) (citing outcome and analysis *Pall, supra,* as "in line with the '[b]ulk of recent cases…[which] have determined that the confidentiality concerns cited by Defendant[s] are mitigated by the nature of the reexamination process'", *quoting Document Generation Corp. v. Allscripts, LLC*, 2009 WL 1766096, at *2 (E.D.Tex. June 23, 2009), and *quoting Crystal Image Tech, Inc. v. Mitsubishi Elec. Corp.*, No. 08-307, 2009 WL 1035017, at *2 (W.D.Pa. Apr. 17, 2009)); *Sanders, et al., v. The Mosaic Company, et al.*, No. 09-00016, 2012 WL 640159 (W.D.Mo. Feb. 27, 2012) (*following and quoting Ameranth and Pall, supra*; and *quoting* MANUAL OF PATENT EXAMINING PROCEDURE § 2666.01 for restricted nature of

reexamination; and reciting several opinions that have "routinely concluded" that nature of reexamination weighs against imposition of a bar denying patentee its choice of counsel).[6]

### 2.   GEA's Application Of A Prosecution Bar To Reexamination Is Overbroad And Unduly Burdensome.

Over and above these general considerations steering the courts away from imposing a reexamination bar, the party seeking to impose it would still have to meet the Federal Circuit requirements articulated in *Deutsche Bank* for a prosecution bar, including that "the scope of activities prohibited by the bar, … and the subject matter covered by the bar reasonably reflect the risk presented by the disclosure of proprietary competitive information." *In re Deutsche Bank,* 605 F.3d at 1378, 1381.  Moreover, even a prosecution bar will not be applied, if, on a counsel-by-counsel basis, it can be shown: "(1) that counsel's representation of the client in matters before the PTO does not and is not likely to implicate competitive decisionmaking related to the subject matter of the litigation so as to give rise to a risk of inadvertent use of

---

[6]    Citing just a few district court cases that represent outliers against the vast majority of cases that have carefully examined this issue and rejected reexamination bars, GEA simply dismisses those decisions as "flawed" saying those courts "fail[ed] to appreciate the real misuse risks raised…"  GEA Memo at 13.  GEA proceeds to selectively quote the Federal Circuit in a way that could mistake those opinions as having upheld application of a prosecution bar to reexaminations.  To be clear, in neither of the two Federal Circuit cases GEA cites at pages 12-13 of its memorandum, *Deutsche Bank* and *Edwards Life Sciences AG v. Corevalve, Inc*., 699 F.3d 1305, 1316 (Fed.Cir. 2012), did the Federal Circuit affirm application of a reexamination bar.  In the former, the reference to "amending or surrendering claim scope during prosecution" quoted by GEA was explicitly in reference to "new inventions" not reexamination of existing patents. *See Deutsche Bank*, 605 F.3d at 1380.  In the latter case, the issue of application of a prosecution bar to reexamination was implicated, because the trial court refused the patentee's request to confirm that a previously entered stipulated prosecution bar did not apply to reexamination proceedings, but the Federal Circuit on review actually suggested that, if the issue was not moot, the trial court on remand reconsider its protective order application in light of the patentee's argument that the balance of equities weighed on the side of permitting it to have the services of its experienced patent attorneys and technical expert in connection with the ongoing reexaminations. *Edwards Lifesciences*, 699 F.3d at 1316 (citing *In re Deutsche Bank*, 605 F.3d at 1381, for proposition that risk of inadvertent disclosure or improper use must be balanced against potential harm of restricting a party's right to continued representation by its counsel).

confidential information learned in litigation, and (2) that the potential injury to the moving party from restrictions imposed on its choice of litigation and prosecution counsel outweighs the potential injury to the opposing party caused by such inadvertent use." 605 F.3d at 1381.

As explained earlier in this Memorandum, the activities of at least Mr. Alciati and Mr. Blank would not warrant a bar, and that applies at least equally if not more so in the reexamination context. In fact, Steuben, despite being a small family-owned company, has retained separate outside counsel to handle primary responsibility for the pending reexaminations. Arlen Olsen of Schmeiser, Olsen & Watts, LLP, has primary responsibility for drafting responses to the PTO and other tasks. So, to prevent Mr. Alciati for instance, from "participating" "in any way", as GEA's overbroad language puts it, which might be seen to include his more limited role with respect to the reexaminations, would deny Steuben its choice of counsel in oversight of the reexamination process. While Mr. Alciati is not a patent prosecution attorney does not have an engineering background (Alciati Decl. ¶¶2-3), he is its one in-house counsel (of three total) tasked with overseeing its patent litigation, including reexaminations. Courts have recognized a plaintiff's "interest in choosing its own counsel, particularly in the highly specialized area of patent litigation and prosecution" as a consideration in refusing to extend and apply a prosecution bar to reexamination. *See NeXedge, LLC*, 820 F.Supp.2d at 1044; *see also Xerox,* 270 F.R.D. at 185 ("In comparison to the attenuated risk of competitive misuse of defendants' confidential information, the potential harm in denying plaintiff reexamination counsel of its choice is significant").

While Steuben has gone to the expense of retaining separate reexamination counsel, even if reexamination bars were appropriate, they would have to be more narrowly or less ambiguously crafted than GEA's proposal, to clarify that outside litigation counsel and in-house

counsel would be able to "participate" to the limited extent of the involvement in the reexamination proceedings here. Such limited participation by its outside litigation counsel and in-house counsel will allow Steuben to avoid the inefficiency and great expense associated with a duplication of effort to understand, assess, and respond to the cited prior art and arguments related to the patentability of Steuben's inventions claimed in the five patents-in-suit at issue in both the reexaminations and litigation.

C.     **Steuben Has Proposed An Adequate And Properly Tailored Prosecution Bar.**

In the spirit of compromise, Steuben agreed to include a prosecution bar in the protective order. However GEA's proposed prosecution/reexamination bar is ambiguous, overbroad, unduly prejudicial and not in keeping with the law in this regard, for all the reasons explained above, including but not limited to the fact it would extend to reexamination. Steuben proposes and has supplied a prosecution bar (Exhibit 1, attached, ¶13) that is properly limited to outside counsel drafting new patent claims and applications. It is sufficient and in keeping with the law in this regard under *In re Deutsche Bank*.

III.   **The Burden Should Be On The Disclosing Party To Demonstrate The Need For A Confidentiality Designation.**

The third and final issue in dispute is the least complicated. GEA suggests that the parties disagreed over other aspects of procedure and in particular the contents of the written notice objecting to a designation of confidentiality, but that is not the case. The real dispute is simply over which party should have the burden of filing a motion in case of a dispute the parties cannot resolve. Steuben submits that it should be manifest that the party asserting entitlement to confidential treatment of its document should have the burden in case of a dispute in that regard of moving the Court for such relief to establish the document's confidentiality. However, in its

proposal, GEA has placed the burden on the receiving party to bring a motion to challenge the producing party's inappropriate designation. This is Paragraph 20 of the respective proposals.

Contrary to GEA's argument, efficiency and incentivizing good conduct weigh in favor of Steuben's proposal. GEA's system will promote over-designation of confidential materials, as the producing party could over-designate its materials without any consequences unless and until the receiving party incurs the costs of a motion. If either party is going to make the decision that the cost of a motion, including the imposition of the burden of the motion on the Court, is a necessary endeavor, it should be the party who seeks the confidentiality protection afforded by Rule 26(c) through the protective order. Steuben's proposal is in accordance with settled law stating that under Rule 26 it is the burden of the party seeking a protective order to establish good cause for its issuance. *See e.g., Deutsche Bank, supra.*

## CONCLUSION

For all the foregoing reasons, Steuben respectfully submits that GEA's motion should be denied and the Court should enter the protective order proposed by Steuben, Exhibit 1 hereto.


Respectfully submitted,

**DATED:**       February 18, 2013       **HISCOCK & BARCLAY, LLP**
Attorneys for the Plaintiff
*Steuben Foods, Inc.*

By:        */s/ Joseph L. Stanganelli*
Joseph L. Stanganelli
Christopher E. Blank
Thomas B. Cronmiller

2000 HSBC Plaza
100 Chestnut Street
Rochester, New York 14604
Telephone:    (585) 295-4000
jstanganelli@hblaw.com
cblank@hblaw.com
tcronmiller@hblaw.com

22

## CERTIFICATE OF SERVICE

I hereby certify that on February 18, 2013, I electronically filed the foregoing Memorandum using the CM/ECF system, which sent electronic or other notification of such filing to all counsel of record in this case.

*/s/ Joseph L. Stanganelli*
Joseph L. Stanganelli
