UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

| | |
|---|---|
| STEUBEN FOODS, INC., | **REPORT AND RECOMMENDATION** |
| Plaintiff, | |
| | 12-CV-00904-EAW-JJM |
| v. | |
| GEA PROCESS ENGINEERING, INC., d/b/a GEA PROCOMAC and GEA PROCOMAC S.p.A., | |
| Defendants. | |

_____

        This patent infringement action has been referred to me by District Judge William M. Skretny for supervision of pretrial proceedings, including the preparation of a Report and Recommendation on dispositive motions [89].[1]  Before me is the motion by defendants (collectively referred to as "GEA") pursuant to Fed. R. Civ. P. ("Rule") 56 for summary judgment declaring that GEA's products do not infringe U.S. Patent No. 6,209,591 (the "'591 patent") [227].  Oral argument was held on February 26, 2016 [282].  For the following reasons, I recommend that the motion be granted in part and denied in part.

## BACKGROUND

        Plaintiff Steuben Foods, Inc. ("Steuben") commenced this action on September 24, 2012, alleging that GEA infringes several U.S. patents, including the '591 patent.  Complaint [1].  "On September 16, 2015, Steuben served its initial infringement contentions . . . . Steuben

---

[1]  Bracketed references to CM/ECF docket entries.  Although Judge Skretny subsequently reassigned this action to District Judge Elizabeth A. Wolford [162], the pretrial assignment to me remains in effect.

further narrowed its initial infringement contentions on October 9, 2015." Steuben's Memorandum of Law [266], p. 9 of 27.  GEA argues that "[t]his motion is ripe because it is based on Steuben's own October 9, 2015 infringement contentions, which admit the material facts warranting summary judgment".  GEA's Memorandum of Law [228], p. 3 of 22.

"The invention described in Steuben's '591 patent is directed to filling bottles with a low-acid food product in a sterile environment at high rates of speed."  Steuben's Memorandum of Law [266], p. 3 of 27.  "Claim 26 of the '591 patent is representative of the claims asserted in this litigation and includes the limitation underlying GEA's motion.  Claim 26 is reproduced below:

> 26.   Apparatus for aseptically filling a series of bottles comprising:
>
> a valve for controlling a flow of low-acid food product at a rate sufficient to dispense the food product at a rate of more than 350 bottles per minute in a single production line;
>
> a first sterile region surrounding a region where the product exits the valve;
>
> a continuously sterilized second sterile region positioned proximate said first sterile region whereby said second sterile region is continuously sterilized during operation;
>
> a valve activation mechanism for controlling the opening or closing of the valve by extending a portion of the valve from the continuously sterilized second sterile region into the first sterile region and by retracting the portion of the valve from the first sterile region back into the continuously sterilized second sterile region."

Id., p. 7 of 27 (emphasis omitted).

GEA's motion focuses solely on the last limitation, which the parties refer to as the "Extending/Retracting Limitation".  GEA's Memorandum of Law [228], p. 10 of 22;

Steuben's Memorandum of Law [266], p. 7 of 27.  Steuben suggests that "[t]he plain language of the Extending/Retracting Limitation requires only that a portion of the valve be extended from one sterile region into another sterile region and then retracted back into the first sterile region to open or close the valve".  Steuben's Memorandum of Law [266], p. 7 of 27.

Steuben argues that its "initial infringement contentions demonstrate that the Extending/Retracting Limitation is met by the valves in the accused machines and at the very least that a reasonable jury could find that it is met.  As can be seen in the illustrations of the interior of the valve below, the valve includes a second sterile region (shown in yellow) in the area where the spring is located.  The first sterile region (shown in green) is the area through which the food product flows, which is located below the diaphragm when the valve is open.  A portion of the valve stem (*e.g.*, the portion shown in red) moves between these two sterile regions when the valve is open and closed:



Id., p. 22 of 27.  "Under this infringement read, the portion of the valve highlighted in red is extended from the second sterile region into the first sterile region and then retracted back into the second sterile region to open and close the valve.  Given the simple nature of the mechanical

movement of the valves included in the accused machines, a reasonable jury could readily find that the accused machines infringe under Steuben's infringement read." Id., p. 23 of 27.

GEA responds that Steuben has "purposely miscolored" the drawing of the accused valve:



Steuben's Purposely Miscolored Drawing (Opp. at 21) (red dashed oval added)

GEA's Reply [258], p. 6 of 15. "Steuben has to color outside the lines and pretend that the green region inside the product pipe encompasses the region *above* the diaphragm, which is totally separated from the foodstuffs. No jury could find that the red valve stem portion is ever within

the product pipe". Id., p. 7 of 15. GEA argues that the "properly colored drawing" is the following:



GEA's Properly Colored Drawing Of The Diaphragm Valve (copied from Steuben's Opp. at 21, but coloring inside the lines, and with diaphragm annotated and shaded gray)

Id., p. 5 of 15.

"[T]he gray diaphragm *separates* the first/green and second/yellow regions. The red valve stem portion is always positioned above the diaphragm so it never extends into the green first sterile region 'within the product pipe' . . . . The red valve portion is like the finger of a person who pinches the sides of a drinking straw to stop a beverage from flowing through the straw. The straw collapses to pinch off flow, but the person's finger is never within the straw, cannot get wet, and cannot contaminate the liquid in the straw." Id., p. 6 of 15 (emphasis in original).

## ANALYSIS

"A determination of infringement is a two-step process . . . . First, the court determines the scope and meaning of the asserted patent claims. The court then compares the properly construed claims to the allegedly infringing device to determine whether all of the claim limitations are present, either literally or by a substantial equivalent." Steuben's Memorandum of Law [266], p. 12 of 27 (*quoting* Innovention Toys, LLC v. MGA Entertainment, Inc., 637 F.3d 1314, 1318 (Fed. Cir. 2011)).

Steuben argues that "it is commonplace for Courts to deny or defer motions for summary judgment where claim construction has not yet occurred, and for at least this reason, GEA's Motion should be denied as premature". Steuben's Memorandum of Law [266], p. 15 of 27. At the same time, however, Steuben "submits that the Extending/Retracting Limitation should be given its plain and ordinary meaning". Id.

"The ordinary and customary meaning of a claim term is 'the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention." Id. (*quoting* Phillips v. AWH Corp., 415 F.3d 1303, 1313 (Fed. Cir. 2005)). As evidence of a person of ordinary skill in the art, Steuben offers the Declaration of Andre Sharon, a Ph.D. in mechanical engineering, who states that "[a] person of ordinary skill in the art . . . would readily understand the meaning of the limitation quoted above according to its plain meaning". [268], ¶8.

Therefore, no claim construction is necessary. "[A] district court is not obligated to construe terms with ordinary meanings . . . . In some cases, the ordinary meaning of claim

language may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words." O2 Micro International Ltd. v. Beyond Innovation Technology Co., 521 F.3d 1351, 1360 (Fed. Cir. 2008). "For such ordinary meaning, we turn to the dictionary definition of the term." Optical Disc Corp. v. Del Mar Avionics, 208 F.3d 1324, 1335 (Fed. Cir. 2000).

The claim at issue requires that a portion of the valve extend "from the second sterile region *into* the first sterile region (emphasis added). "The plain meaning of 'into' can be gleaned from its dictionary definition. The word 'into' typically follows 'a verb that carries the idea of motion . . . to indicate a place or thing . . . enterable or penetrable by or as if by a movement from the outside to the interior part.' Webster's Third New International Dictionary 1184 (1986). It is also defined as describing action 'from the outside to the inside of; toward and within.' Webster's New World Dictionary 738 (2d ed.1984)." Commonwealth v. McCoy, 599 Pa. 599, 611, 962 A.2d 1160, 1166-67 (Sup. Ct. Pa. 2009). "'It expresses . . . a passage from the outside of a thing to its interior'. Black's Law Dictionary 822 (6th ed.1990)." State v. Goddard, 34 S.W.3d 436, 439 (Mo. Ct. App. 2000).

Steuben identifies the red valve stem as the "portion of the valve" extending into the first sterile region. Steuben's Memorandum of Law [266], pp. 8, 22 and 23 of 27; Sharon Declaration [268], ¶11 ("at least the valve stem portion of the valve extends into the product pipe"). However, the drawings submitted by the parties (and reproduced in this opinion) clearly demonstrate that it is physically impossible for the red valve stem to extend "into" (*i.e.* "to the inside of") the first sterile region, because the diaphragm lies between it and that region. *See*

Oxford English Dictionary Online (defining a diaphragm as "anything natural or artificial which in its nature or function . . . serves as a partition").

"When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Scott v. Harris, 550 U.S. 372, 380 (2007).[2] See also Dunshie v. Dick's Sporting Goods, 2012 WL 253383, *5 (W.D.N.Y.), adopted, 2012 WL 253374 (W.D.N.Y. 2012) (Arcara, J./McCarthy, M.J.) (evidence that "is contradicted by unassailable physical evidence . . . cannot survive a summary judgment motion").

"Each element contained in a patent claim is deemed material to defining the scope of the patented invention." Warner-Jenkinson Co. v. Hilton Davis Chemical Co., 520 U.S. 17, 29 (1997). "Consequently, a claim is infringed only if *each* limitation in the claim is found in the accused device, either literally or by a substantial equivalent." Vehicular Technologies Corp. v. Titan Wheel International, Inc., 141 F.3d 1084, 1089 (Fed. Cir. 1998) (emphasis added). For the reasons already discussed, Steuben's preliminary infringement contentions do not establish literal infringement of the '591 patent, because the valve stem does not extend "into" the first sterile region.

In the alternative, Steuben argues that equivalency can be demonstrated under the doctrine of equivalents, "by providing objective evidence that the differences between the accused product and the claimed invention are insubstantial". Steuben's Memorandum of Law [266], p. 24 of 27. Although "the insubstantial differences test offers little additional guidance as

---

[2] "The standard for summary judgment in a patent infringement case is no different than in a non-patent case." Steuben's Memorandum of Law [266], p. 11 of 27 (citing CA, Inc. v. Simple.com, Inc., 780 F. Supp.2d 196, 208 (E.D.N.Y. 2009)).

to what might render any given difference 'insubstantial'", Warner-Jenkinson, 520 U.S. at 29, "the particular linguistic framework used is less important than whether the test is probative of the essential inquiry: Does the accused product or process contain elements identical or equivalent to *each claimed element* of the patented invention?" Id. at 40 (emphasis added). "It is important to ensure that the application of the doctrine, even as to an individual element, is not allowed such broad play as to effectively eliminate that element in its entirety." Id. at 29; *see also* Vehicular Technologies, 141 F.3d at 1089 ("the doctrine of equivalents must be applied to individual elements of the claim, not to the invention as a whole").

Therefore, "if a court determines that a finding of infringement under the doctrine of equivalents would entirely vitiate a particular claimed element, then the court should rule that there is no infringement under the doctrine of equivalents". Freedman Seating Co. v. American Seating Co., 420 F.3d 1350, 1358 (Fed. Cir. 2005). Since Steuben's initial infringement contentions offer no equivalent for the claimed element that the valve portion must extend "into" the first sterile region, they cannot establish infringement under the doctrine of equivalents.

Steuben contends that GEA's motion "should be denied as premature as Steuben has not yet served final infringement contentions". Steuben's Memorandum of Law [266], p. 2 of 27. "The purpose of preliminary infringement contentions is to assist the court and guide the parties in focusing on potentially dispositive issues, providing a framework for discovery and generally facilitating the proceedings . . . . [P]reliminary infringement contentions are not meant to provide a forum for litigation of substantive issues; they are merely designed to streamline the discovery process." AntiCancer, Inc. v. Pfizer, Inc., 769 F.3d 1323, 1329 (Fed. Cir. 2014).

Preliminary infringement contentions must "identify specifically and in detail where each claim element is found in the accused products, so that the Court can make a

principled decision on whether discovery will proceed". Yama Capital LLC v. Canon Inc., 2013 WL 6588589, *3 (S.D.N.Y. 2013). Since I have concluded that Steuben's preliminary infringement contentions are insufficient to show GEA's infringement of the '591 patent, there is no point in allowing discovery to support that theory.[3]

      Steuben is technically correct in asserting that its infringement claims against GEA with respect to the '591 patent cannot be dismissed based solely on its preliminary infringement contentions. However, since I have concluded that its preliminary contentions do not demonstrate infringement, dismissal of its claims against GEA with respect to the '591 patent would likely be appropriate if its final infringement contentions[4] do not materially differ from its initial contentions. See Yama Capital, 2013 WL 6588589, *18 ("[i]f Plaintiff continues to file inadequate Infringement Contentions . . . a more conclusive remedy may be required in the future"); Panavision Imaging, LLC v. Omnivision Technologies, Inc., 2012 WL 367194, *3 (C.D. Cal. 2012) ("[b]ecause Panavision fails to raise a genuine issue of material fact showing that the components it identified in its final infringement contentions meet the [applicable] limitation, the Court grants Micron/Aptina's motion for summary judgment").

---

[3]    For example, Steuben argues that it "has not yet deposed the machine manufacturer Procomac [and] has received very little documentation on how the accused filling valve operates within the accused machines". Steuben's Memorandum of Law [266], p. 3 of 27. However, at this point any attempt to prove that the machines operate in the manner disclosed in Steuben's preliminary contentions would be pointless, since I have already concluded that that manner of operation does not infringe.

[4]    Under the Second Amended Case Management Order, Steuben's final infringement contentions were due on March 31, 2016. [281], p. 3 of 3. I have not yet seen them.

## CONCLUSION

For these reasons, I recommend that GEA's motion [227] for summary judgment be granted in part, by determining that Steuben's preliminary infringement contentions cannot establish GEA's infringement of the '591 patent, but that the motion otherwise be denied, without prejudice to renewal (if appropriate) based upon Steuben's final infringement contentions.

Unless otherwise ordered by Judge Wolford, any objections to this Report and Recommendation must be filed with the clerk of this court by April 21, 2016 (applying the time frames set forth in Rules 6(a)(1)(C), 6(d), and 72(b)(2)). Any requests for extension of this deadline must be made to Judge Wolford. A party who "fails to object timely . . . waives any right to further judicial review of [this] decision". Wesolek v. Canadair Ltd., 838 F. 2d 55, 58 (2d Cir. 1988); Thomas v. Arn, 474 U.S. 140, 155 (1985).

Moreover, the district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the magistrate judge in the first instance. Patterson-Leitch Co. v. Massachusetts Municipal Wholesale Electric Co., 840 F. 2d 985, 990-91 (1st Cir. 1988).

The parties are reminded that, pursuant to Rule 72(b) and (c) of this Court's Local Rules of Civil Procedure, written objections shall "specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection . . . supported by legal authority", and must include "a written statement either certifying that the objections do not raise new legal/factual arguments, or identifying the new arguments and

explaining why they were not raised to the Magistrate Judge". Failure to comply with these provisions may result in the district judge's refusal to consider the objections.

Dated: April 4, 2016

/s/ Jeremiah J. McCarthy  
JEREMIAH J. MCCARTHY  
United States Magistrate Judge
