UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

STEUBEN FOODS, INC.,

      Plaintiff,

v.

GEA PROCESS ENGINEERING, INC.,
d/b/a GEA PROCOMAC and GEA
PROCOMAC S.p.A.,

      Defendants.

**REPORT AND RECOMMENDATION**

12-CV-00904-EAW-JJM

---

    This patent infringement action has been referred to me by District Judge William M. Skretny for supervision of pretrial proceedings, including the preparation of a Report and Recommendation on dispositive motions [89].[1]  Before me is the motion by defendants (collectively referred to as "GEA") pursuant to Fed. R. Civ. P. ("Rules") 15(a) and 16(b) to again amend their Answer and Counterclaims to assert additional inequitable conduct claims [235]. Oral argument was held on April 6, 2016 [298].  For the following reasons, I recommend that the motion be denied.[2]

---

[1]  Bracketed references to CM/ECF docket entries.  Although Judge Skretny subsequently reassigned this action to District Judge Elizabeth A. Wolford [162], the pretrial assignment to me remains in effect.

[2]  "District courts in this circuit have suggested that a magistrate judge's denial of a motion to amend . . . should be treated as dispositive, while a grant of the same motion should be treated as non-dispositive." Zink v. First Niagara Bank, N.A., 2015 WL 423221, *1, n. 2 (W.D.N.Y. 2015). While there is contrary authority (see Eastman Chemical Co. v. Nestlé Waters Management & Technology, 2014 WL 1316772, *2 (S.D.N.Y. 2014) (advocating a nondispositive standard of review where "denial of leave to amend was based on procedural issues like failure to comply with a scheduling order")), I prefer to err on the side of caution.

## ANALYSIS

This court's Case Management Order required motions to amend pleadings to be filed by October 4, 2013. [48], ¶6. However, GEA's motion was not filed until December 18, 2015, over two years beyond that deadline. "[T]he Rule 16(b) 'good cause' standard, rather than the more liberal standard of Rule 15(a), governs a motion to amend filed after the deadline a district court has set for amending the pleadings . . . . [A] finding of 'good cause' depends on the diligence of the moving party." Parker v. Columbia Pictures Industries, 204 F.3d 326, 340 (2d Cir. 2000); Paulus v. Holimont, Inc., ___F.R.D.___, 2016 WL 790953, *2 (W.D.N.Y. 2016) (Wolford, J.).

GEA argues that it has been diligent "because the proposed amendments are based on recently produced 'smoking gun' documents that reveal further acts of inequitable conduct by Steuben's inventor and counsel . . . . The confirmation of this inequitable conduct comes primarily from two documents that Steuben recently produced in response to document requests that GEA served . . . on February 19, 2013". GEA's Memorandum of Law [238], pp. 4, 5.

The first such document is a March 17, 1999 report entitled "Design of an Aseptic Bottle Filler" [262-3], containing the following parenthetical: "(Only one filler, the Bosch bottle line owned by Ross Laboratories, has received [FDA] approval, however, the filler speed is only 100 bottles per minute . . .)". Id., p. 3. During oral argument, counsel for GEA characterized this parenthetical language, when coupled with the date of the report, as a "smoking gun" ([298], pp. 20-21), presumably because it would undercut Steuben's claim "to have invented FDA-approved, low-acid aseptic bottling at a speed greater than 100 bottles/minute". GEA's Memorandum of Law [238], p. 4.

-2-

However, Steuben points out that it produced this report to GEA on March 15, 2013 (Stanganelli Declaration [262-1], ¶¶2, 3; [262-2], p. 2 of 6; [262-3]), and the last page of that report bore a date of March 17, 1999 ([262-3], p. 20). While admitting that it received the report in March 2013, GEA argues that the report "lacked a cover sheet showing that Steuben created and had the document <u>in 1999</u>. . . . A dated page was in the production at the back of the Undated Document . . . . However, GEA could not reasonably ascertain in 2013 whether that attachment page revealed the date of the Undated Document to which it was appended . . . . It was not until Steuben produced the 1999 Memo in Fall 2015 with the dated page re-positioned to be the first/cover page that GEA could reasonably determine . . . that it was a 1999 memo." GEA's Reply [288], p. 3 (emphasis in original).

GEA's excuse is unpersuasive. The report which Steuben provided to GEA in March 2013 revealed that Steuben knew of the Bosch equipment's capabilities. Even if (as it now claims) GEA did not associate the dated last page of the report with its remainder, GEA offers no credible reason why it did not make further inquiry - for if Steuben's knowledge of the Bosch equipment's capabilities was truly "smoking gun" information, then it stands to reason that GEA would have wanted to know when Steuben acquired that knowledge. Yet, according to counsel for Steuben, GEA "never asked us about the date of the document. We would have been happy to give it to them". Transcript of oral argument [298], p. 30.

Therefore, GEA is charged with knowledge of the date of the report at the time it received the report in March 2013. "Knowledge of facts which, to the mind of a man of ordinary prudence, beget inquiry, is actual notice, or, in other words, is the knowledge which a reasonable investigation would have revealed." <u>Rankin v. City of Niagara Falls</u>, 2012 WL 3886327, *4 (W.D.N.Y. 2012) (McCarthy, M.J.), <u>adopted in relevant part,</u> 293 F.R.D. 375 (W.D.N.Y. 2013)

-3-

(Arcara, J.), aff'd, 569 F. App'x 25 (2d Cir. 2014). "The duty of inquiry having arisen, plaintiff is charged with whatever knowledge an inquiry would have revealed." TRW Inc. v. Andrews, 534 U.S. 19, 30 (2001).

The second so-called "smoking gun" document is Steuben's November 21, 2003 "FOIA Appeal Letter" ([288-2], pp. 2-3 of 3), which Steuben produced to GEA on October 26, 2015. GEA's Memorandum of Law [238], p. 6. GEA argues that this document "confirms that Steuben's representatives . . . knew the speed of the Bosch/Abbott Machines and knew that they had an affirmative duty to disclose that speed to the USPTO". Id. However, GEA fails to adequately explain why it did not follow up with Steuben concerning this document until August 27, 2015 (id., p. 5).

GEA claims that it "knew from Steuben's document production that (1) Steuben had filed a . . . FOIA Request with the FDA seeking information about the Bosch/Abbott machine in 2003, (2) Steuben's FOIA Request was denied, and (3) Steuben appealed that denial in 2003 . . . . Based on the surrounding correspondence (including correspondence produced by Steuben on August 19, 2015), GEA believed that this appeal letter was highly relevant". Id. GEA does not describe the "document production" or "surrounding correspondence" to which it refers, or state when it received that information. In any event, GEA knew or should have known in or shortly after March 2013 (when it received the March 17, 1999 report) that Steuben was aware of the speed of the Bosch equipment, and as Steuben points out (Steuben's Opposition [262], pp. 8-9 of 25), GEA has previously alleged, and Steuben has admitted, that it has an obligation to disclose material information to the PTO.

In addition to these two "smoking gun" documents, GEA claims that "[i]n the past several months, [it] sifted through tens of thousands of pages of Steuben document production

and discovered that Steuben apparently possessed a variety of additional and material Bosch brochures during the original prosecution of the Patents-In-Suit . . . . Steuben also violated its duty of good faith by withholding those additional Bosch documents from the USPTO". GEA's Memorandum of Law [238], p. 7. However, Steuben points out that GEA "has been in possession of every one of those documents since March 2013". Steuben's Opposition [262], p. 10 of 25.

Therefore, GEA has not shown "good cause" for failing to earlier move to amend. See Paulus, 2016 WL 790953, *2 ("[a] party fails to show good cause when the request for an extension rests on information that the party knew, or should have known, in advance of the deadline").

GEA argues that granting the amendment will not prejudice Steuben because "Steuben will likely have to litigate these new fraud claims against Nestlé and Jasper (who are expected to add similar fraud claims by their February 23, 2016 deadline to do so)". GEA's Reply [288], p. 5.[3] However, that argument cuts both ways: if Nestlé or Jasper prevail on those claims, thereby invalidating or rendering the Steuben patents unenforceable, GEA will not be prejudiced by the denial of its motion to amend - for as Steuben admitted at oral argument, "if there's a determination of invalidity or unenforceability as to a particular patent or patent claim, then that would apply in each case in which that patent is alleged to have been infringed, whether or not that particular issue has been pled". [298], pp. 13, 14.

In any event, the absence of prejudice to Steuben is not determinative of whether GEA's belated motion should be granted. See Gullo v. City of New York, 540 F. App'x 45, 47

---

[3] Nestlé USA, Inc. and Jasper Products, LLC are defendants in related actions commenced by Steuben involving the same patents. 13-cv-892, 13-cv-1118. Their motions to amend their answers have been granted without opposition by Steuben. See 13-cv-892 [149]; 13-cv-1118 [112].

(2d Cir. 2013) ("[t]hat defendants suffered no prejudice does not change the fact that plaintiffs failed to pursue amendment with diligence"); Desir v. Austin, 2015 WL 4546625, *3 (E.D.N.Y. 2015) ("a lack of prejudice is not a substitute for the moving party's obligation to demonstrate its own diligence and thereby establish good cause for a modification" ); Shemendera v. First Niagara Bank N.A., 288 F.R.D. 251, 253 (W.D.N.Y. 2012) ("the absence of prejudice to the non-moving party . . . does not satisfy the good cause requirement"); Oppenheimer & Co. Inc. v. Metal Management, Inc., 2009 WL 2432729, *4 (S.D.N.Y. 2009), adopted, 2010 WL 743793 (S.D.N.Y. 2010) ("to allow the lack of prejudice to trump [the moving party's] lack of good cause would be to ignore the important distinction between Rules 15(a) and 16(b)").

## CONCLUSION

"[T]he grant or denial of leave to amend is within the discretion of the district court." Evans v. Syracuse City School District, 704 F.2d 44, 46 (2d Cir. 1983). For the foregoing reasons, in the exercise of that discretion I recommend that GEA's motion [235] to amend be denied.

Unless otherwise ordered by Judge Wolford, any objections to this Report and Recommendation must be filed with the clerk of this court by May 16, 2016 (applying the time frames set forth in Rules 6(a)(1)(C), 6(d), and 72(b)(2)). Any requests for extension of this deadline must be made to Judge Wolford. A party who "fails to object timely . . . waives any right to further judicial review of [this] decision". Wesolek v. Canadair Ltd., 838 F. 2d 55, 58 (2d Cir. 1988); Thomas v. Arn, 474 U.S. 140, 155 (1985). Moreover, the district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the magistrate judge in the first instance. Patterson-

Leitch Co. v. Massachusetts Municipal Wholesale Electric Co., 840 F. 2d 985, 990-91 (1st Cir. 1988).

The parties are reminded that, pursuant to Rule 72(b) and (c) of this Court's Local Rules of Civil Procedure, written objections shall "specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection . . . supported by legal authority", and must include "a written statement either certifying that the objections do not raise new legal/factual arguments, or identifying the new arguments and explaining why they were not raised to the Magistrate Judge". Failure to comply with these provisions may result in the district judge's refusal to consider the objections.

Dated: April 29, 2016

/s/ Jeremiah J. McCarthy
JEREMIAH J. MCCARTHY
United States Magistrate Judge