

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

STEUBEN FOODS, INC.,

               Plaintiff,                    **DECISION AND ORDER**

       v.                                  1:12-CV-00904 EAW

GEA PROCESS ENGINEERING, INC., d/b/a
GEA Procomac, and GEA PROCOMAC S.P.A.,

               Defendants.
_____

## INTRODUCTION

Plaintiff Steuben Foods, Inc. ("Plaintiff") has sued Defendants GEA Process Engineering and GEA Procomac S.p.A. (collectively "Defendants") for patent infringement under 35 U.S.C. §§ 100 *et seq.* (Dkt. 1). Plaintiff's complaint, filed on September 24, 2012, alleges, among other things, that Defendants have infringed United States Patent No. 6,209,591 (the "'591 Patent"). (*Id.* at ¶¶ 65-71). The '591 Patent issued on April 3, 2001, and is entitled "Apparatus and Method for Providing Container Filling in an Aseptic Processing Apparatus." (*Id.* at ¶ 23).

This case was initially assigned to the Honorable William M. Skretny, United States District Judge. On December 20, 2013, Judge Skretny entered an order referring this matter to the Honorable Jeremiah J. McCarthy, United States Magistrate Judge, for hearing and disposition of all non-dispositive motions or applications, supervision of

discovery, and to hear and report upon dispositive motions pursuant to 28 U.S.C. §§ 636(1)(B) and (C). (Dkt. 89).

Defendants filed a motion for summary judgment of non-infringement of the '591 Patent on November 18, 2015. (Dkt. 227). On April 4, 2016, Magistrate Judge McCarthy recommended that this Court grant in part and deny in part Defendant's motion. (Dkt. 292). With the Magistrate Judge's leave (Dkt. 295), Defendants filed an amended motion for summary judgment on April 15, 2016. (Dkt. 300). Magistrate Judge McCarthy filed a second Report and Recommendation on August 26, 2016, this time recommending that the Court grant Defendants' amended motion for summary judgment of non-infringement of the '591 Patent. (Dkt. 356). Presently before the Court are Plaintiff's objections to the second Report and Recommendation. (Dkt. 366).

The Court has reviewed the second Report and Recommendation (Dkt. 356); the objections, response, and reply (Dkts. 366, 380, 388); the amended summary judgment motion and briefing papers (Dkts. 300, 308, 315, 321-22, 339-41); the transcript of the oral argument on the amended summary judgment motion, and the parties' accompanying argument outlines (Dkts. 327, 328, 331); the first Report and Recommendation (Dkt. 292); and the original summary judgment motion and briefing papers (Dkts. 227-28; 246-48; 254; 266-70). For the reasons stated below, the Court denies Plaintiff's objections, adopts the second Report and Recommendation in whole, and grants Defendants'

amended motion for summary judgment (Dkt. 300). Defendants' initial motion for summary judgment (Dkt. 227) is denied as moot.

## BACKGROUND

The factual and procedural background of this case is set forth in detail in the two Reports and Recommendations. (*See* Dkt. 292 at 1-6; Dkt. 356 at 1-2). Familiarity with the Reports and Recommendations is assumed for purposes of this Decision and Order.

## DISCUSSION

### I. Standard of Review

A district court reviews any specific objections to a report and recommendation under a *de novo* standard. Fed. R. Civ. P. 72(b)(3); *see also* 28 U.S.C. § 636(b)(1)(C) ("A judge of the court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made."). To trigger the *de novo* review standard, objections must "specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection." L.R. Civ. P. 72(b); *see, e.g.*, *Molefe v. KLM Royal Dutch Airlines*, 602 F. Supp. 2d 485, 487 (S.D.N.Y.2009). Following review of the report and recommendation, the district judge "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

## II. Plaintiff's Objections Lack Merit

Plaintiff has made the following objections to the second Report and Recommendation (the "R&R"): (1) the R&R improperly narrows the meaning of the word "into"; (2) the R&R fails to resolve the parties' dispute regarding the definition of the first and second sterile regions; (3) the R&R improperly construes the claim by reference to the accused device; (4) the R&R improperly rejects Plaintiff's infringement theory under its own construction of the word "into"; (5) the R&R improperly relies on Plaintiff's infringement contentions and annotated demonstratives; and (6) the R&R improperly failed to consider and approve Plaintiff's request for additional discovery. The Court has considered each of these objections and, for the reasons set forth below, finds them to be without merit.

### A. The R&R Properly Construes the Word "Into"

As set forth in the R&R, the asserted claims of the '591 Patent contain a limitation requiring that the claimed invention include "a valve activation mechanism for controlling the opening or closing of the valve by extending a portion of the valve from the continuously sterilized second sterile region into the first sterile region and by retracting the portion of the valve from the first sterile region back into the continuously sterilized second sterile region." (Dkt. 356 at 3). The parties refer to this claim limitation as the "Extending/Retracting Limitation." (*Id.*). In resolving Defendants' amended motion for summary judgment, the R&R concludes that the word "into," as used in the

Extending/Retracting Limitation, "connotes at least the possibility of contact with the contents of the region into which movement occurs." (*Id.* at 6). In reaching that conclusion, Magistrate Judge McCarthy noted the following: (1) in construing the scope and meaning of claim terms, the Court must consider the problem the inventor was trying to solve; (2) under Plaintiff's own theory of the case, the '591 patent was intended to solve the problem of a valve stem potentially carrying contaminants from a non-sterile region into a sterile region; and (3) it is impossible for a valve stem to become contaminated if it does not come into contact with the contents of a particular region. (*Id.* at 4-6).

"The[re] are two elements of a simple patent case, construing the patent and determining whether infringement occurred. . . . The first is a question of law, to be determined by the court, construing the letters-patent, and the description of the invention and specification of claim annexed to them." *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 384 (1996) (quotation omitted). "In construing [patent] claims, the analytical focus must begin and remain centered on the language of the claims themselves, for it is that language that the patentee chose to use to particularly point [ ] out and distinctly claim[ ] the subject matter which the patentee regards as his invention. The words used in the claims are examined through the viewing glass of a person skilled in the art. In the absence of an express intent to impart a novel meaning to the claim terms, the words are presumed to take on the ordinary and customary meanings attributed

to them by those of ordinary skill in the art." *Brookhill-Wilk 1, LLC. v. Intuitive Surgical, Inc.*, 334 F.3d 1294, 1298 (Fed. Cir. 2003) (quotation and citations omitted). "To ascertain the scope and meaning of the asserted claims, [a court] look[s] to the words of the claims themselves, the specification, the prosecution history, and any relevant extrinsic evidence. This inquiry typically begins and ends with the intrinsic evidence. In fact, the specification is the single best guide to the meaning of the claim terms; it is usually dispositive." *Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1217-18 (Fed. Cir. 2014); *see also MBO Labs., Inc. v. Becton, Dickinson & Co.*, 474 F.3d 1323, 1329 (Fed. Cir. 2007) ("The words of patent claims have the meaning and scope with which they are used in the specification and the prosecution history.").

In this case, the Court agrees with Magistrate Judge McCarthy that based on the intrinsic evidence, the word "into," as used in the Extending/Retracting Limitation, necessarily includes the possibility of contact with the contents of the region that is entered. "The specification, of which the claims are part, teaches about the problems solved by the claimed invention, the way the claimed invention solves those problems, and the prior art that relates to the invention. These teachings provide valuable context for the meaning of the claim language." *Eastman Kodak Co. v. Goodyear Tire & Rubber Co.*, 114 F.3d 1547, 1554 (Fed. Cir. 1997), *overruled in part on other grounds by Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1456 (Fed. Cir. 1998). In this case, the patent specification expressly identifies the problem that the Extending/Retracting Limitation is

intended to solve: "the first portion . . . of the valve stem . . . may carry contaminants from the non-sterile region . . . into the first sterile region. . . . In order to overcome this difficulty, the present invention has introduced a second sterile region. . . ." ('591 Patent, col. 14, l. 16-21) (Dkt. 1-5 at 30). In other words, the '591 Patent's specification makes it clear that when a portion of the valve moves from one region into another, it interacts with the contents of each region, such that contaminants may be passed back and forth. In this context, the word "into" cannot fairly be construed to include situations where the relevant portion of the valve is separated from the second region by a physical barrier.

The Federal Circuit's decision in *MBO Laboratories* is instructive. There, the patent at issue described a design for a hypodermic safety syringe, in order to protect health care workers from accidental needle sticks following either an injection or the drawing of fluids. *MBO Labs.*, 474 F.3d at 1326. The district court construed the term "immediately," which was used in several of the patent's claims, to mean "simultaneously with removal [of the needle] from the patient." *Id.* at 1329. In affirming that construction, the Federal Circuit explained that "both [the patent at issue's] specification and prosecution history clearly indicate that the invention is focused on ensuring the protection of the healthcare worker, patient, and bystanders by safely covering the needle at once upon removal from the patient." *Id.* Because the patentee had indicated "that the invention provides, as an essential feature, immediate needle safety upon removal from the patient," it was "therefore appropriate to construe the

claims so as to ensure that they, too, require that feature." *Id.* at 1330. Similarly, in this case, the patentee has indicated in the specification that the valve is potentially contaminated by the contents of each region it enters into and that the claimed invention provides a solution to that problem, and the language of the claims must be read consistently with that understanding.

The Court disagrees with Plaintiff that this construction of the word "into" represents an unwarranted departure from its ordinary and customary meaning. Although Plaintiff is correct that "into" is a commonly used word in the English language, the Federal Circuit has made it clear that the "general meanings" of disputed claim terms "must always be compared against the use of the terms in context, and the intrinsic record must always be consulted to identify which of the different possible dictionary meanings is most consistent with the use of the words by the inventor." *Brookhill-Wilk 1, LLC v. Intuitive Surgical, Inc.*, 326 F.3d 1215, 1221-22 (Fed. Cir. 2003). Moreover, "[w]here there are several common meanings for a claim term, the patent disclosure serves to point away from the improper meanings and toward the proper meanings." *Id.* (internal quotation omitted). In this case, the word "into" may sometimes be "broadly used to connote . . . directional movement or a change in state," as argued by Plaintiff (*see* Dkt. 366 at 18), but it may also be "used as a function word to indicate entry, *introduction*, insertion, *superposition*, or *inclusion*." "Into," *Merriam Webster Online*, https://www.merriam-webster.com/dictionary/into (last visited March 13, 2017)

(emphasis added). In other words, at least some common definitions of "into" involve contact with the contents of the thing entered. For example, if a recipe instructs a cook to add an ingredient into a mixture, it is generally understood that the ingredient must be removed from its packaging. Magistrate Judge McCarthy therefore properly looked to the intrinsic evidence in ascertaining the proper construction of "into" as used in the Extending/Retracting Limitation.

In light of the foregoing, the Court also finds that Judge McCarthy properly declined to adopt the extrinsic opinion of Plaintiff's expert. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1318 (Fed. Cir. 2005) ("a court should discount any expert testimony that is clearly at odds with the claim construction mandated by the claims themselves, the written description, and the prosecution history, in other words, with the written record of the patent") (internal quotation omitted). In this case, the opinion offered by Plaintiff's expert is inconsistent with the intrinsic evidence and cannot be credited.

### B. The R&R Properly Determined that the First and Second Sterile Regions are Defined by a Physical Boundary

Plaintiff next argues both that the R&R failed to resolve the parties' dispute regarding whether the first and second sterile regions are fixed areas or are defined by a physical boundary, and that the R&R did in fact resolve this dispute, but wrongly determined that the first and second sterile regions are defined by a physical boundary. These objections are both internally inconsistent and without merit.

As Plaintiff concedes, the R&R, while not formally stating as much, clearly found that the first and second sterile regions were defined by a physical boundary, rather than being fixed areas. (*See* Dkt. 356 at 6-7). The R&R's construction of the definition of region is fully supported by the intrinsic evidence. The '591 Patent's specification expressly describes the second sterile area as being "enclosed by a housing . . . and by a wall," and states that "[t]he wall . . . separates the second sterile region . . . from the first sterile region." ('591 Patent, col. 14, l. 24-26) (Dkt. 1-5 at 30). Significantly, the specification also specifically anticipates that the second sterile region will be continuously supplied with and filled by sterilizing media and that the second sterile region will be separated from the non-sterile region by a housing. ('591 Patent, col. 14, l. 29-35) (Dkt. 1-5 at 30). While the patent claims are of course not limited to the specific embodiments disclosed in the specification, Plaintiff has offered no explanation for how a "sterile region" consisting of a fixed area undefined by any physical boundary could be separated from a non-sterile area and filled by sterilizing media. The Court cannot determine the meaning of a patent term "in a vacuum. Rather, [the Court] must look at the ordinary meaning in the context of the written description and the prosecution history." *DeMarini Sports, Inc. v. Worth*, 239 F.3d 1314, 1324 (Fed. Cir. 2001).

It is also true that "a court may not use the accused product or process as a form of extrinsic evidence to supply limitations for patent claim language." *Wilson Sporting Goods Co. v. Hillerich & Bradsby Co.*, 442 F.3d 1322, 1331 (Fed. Cir. 2006). However,

this rule "does not forbid awareness of the accused product or process to supply the parameters and scope of the infringement analysis, including its claim construction component." *Id.* Nothing in the R&R violates the *Wilson Sporting Goods* rule because, as set forth above, the definition of "region" used in the R&R is supported by the language of the '591 Patent itself, and does not depend on any reference to the accused product.

### C. Plaintiff's Infringement Theory Fails Under the Proper Construction of "Into"

Plaintiff's next objection is that even under the construction of "into" set forth in the R&R, its infringement theory is valid. (Dkt. 366 at 26-29). The R&R properly rejected this argument, explaining that the language of the Extending/Retracting Limitation "requires that the *same* portion of the valve move from one region into the other." (Dkt. 356 at 6-7) (emphasis in original). As set forth in the R&R, Plaintiff's infringement theory fails as a matter of law because the physical construction of the accused product makes it impossible for the same portion of the valve to extend from one region into another. (*Id.* at 6). Moreover, Plaintiff acknowledges that this objection is dependent on the first and second sterile regions being defined as fixed without regard to physical boundaries (*see* Dkt. 366 at 26), an argument which the Court has already rejected.

### D. Summary Judgment is not Premature

Plaintiff's final two objections are that summary judgment is premature, because (1) Defendants' amended motion for summary judgment is based on Plaintiff's infringement contentions, which is a "notice document," and (2) Plaintiff wishes to conduct additional discovery. (Dkt. 366 at 28-30). Again, the R&R addressed these arguments, explaining that summary judgment need not be deferred where it is clear from the final infringement contentions that infringement could not have occurred. (Dkt. 356 at 7). Plaintiff has not identified any cases contradicting this proposition, nor has Plaintiff explained how additional discovery would support its infringement theory.

### E. Defendants' Initial Summary Judgment Motion is Moot

As set forth in the first Report and Recommendation, Defendants' initial summary judgment motion was based on Plaintiff's preliminary infringement contentions. (*See* Dkt. 292 at 11). In the R&R, Magistrate Judge McCarthy explained that, in his view, the first Report and Recommendation had been "subsumed" by the R&R. (Dkt. 356 at 8 n.5). The Court agrees. Defendants' amended motion for summary judgment (Dkt. 300) expressly incorporated and renewed the arguments set forth in their initial motion for summary judgment (Dkt. 227), and thereby mooted that earlier application.

## **CONCLUSION**

For the reasons set forth above, the Court adopts the R&R (Dkt. 356) in whole and grants Defendants' amended motion for summary judgment (Dkt. 300). Defendants' initial motion for summary judgment (Dkt. 227) is denied as moot.

SO ORDERED.

                                                  ELIZABETH A. WOLFORD
                                                  United States District Judge

Dated: March 17, 2017
       Rochester, New York